

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed May 11, 2023**

_____
**United States Bankruptcy Judge**
_____

## United States Bankruptcy Court
## Northern District of Texas
## Dallas Division

| | | |
|---|---|---|
| In re: | § § | |
| Aaron Sherman Buck, | § § | Case No. 19-34052-swe-7 |
| Debtor. | § § § | |
| Crest Foods, Inc., | § § § | |
| Plaintiff, | § | |
| v. | § § | Adv. No. 22-3029-swe |
| Aaron Sherman Buck, | § § § | |
| Defendant. | § | |

*Findings of fact and conclusions of law*

In this case, the Plaintiff is seeking a determination that its claim against the Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(3)(A) because of the Debtor's failure to schedule the Plaintiff's claim or list the Plaintiff on the official creditor matrix in time for the Plaintiff to file a timely proof of claim and participate in the bankruptcy case. The Debtor contends that the factors to be considered under controlling Fifth Circuit precedent, including the reasons for the failure to schedule the Plaintiff's claim, the level of disruption to the court, and

1

the lack of prejudice to the Plaintiff and other creditors, all weigh against granting the Plaintiff relief under section 523(a)(3)(A).

The parties submitted a *Proposed Joint Pretrial Order*, which was signed and entered by the Court. Docket No. 32 (the "**Joint Pretrial Order**").[1] The Court held trial in this matter on April 4, 2023, and took the matter under advisement. The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.[2] For the reasons described below, all relief requested by the Plaintiff is denied.

## I. Jurisdiction and Venue

This Court has jurisdiction over the parties and claims asserted in this proceeding under 28 U.S.C. § 1334. The claim against the Debtor is a core matter under 28 U.S.C. § 157(b)(2)(I), as it involves a determination of the dischargeability of a particular debt. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## II. Findings of Fact

The Plaintiff is a franchisor of Nestle Toll House Café, a dessert and bakery café. In March 2018, Healthy Goods & Stuff, LLC (the "**Company**") executed a franchise agreement (the "**Franchise Agreement**") with the Plaintiff. The Debtor, as an owner of the Company, signed the Franchise Agreement on behalf of the Company and also signed that

---

[1] During opening statements at trial, counsel for the Plaintiff noted that the Debtor did not list any contentions in section 1 of the Joint Pretrial Order. Counsel for the Plaintiff appeared to argue that the Debtor had, therefore, waived his right to assert positions at trial. Nevertheless, counsel for the Plaintiff stated that he simply wanted to "preserve the record" before proceeding with trial.

The lack of contentions from the Debtor in section 1 of the Joint Pretrial Order is not any kind of waiver. It is true that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial. *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000). While the Debtor did not include a summary of claims and defenses in the Joint Pretrial Order, the Debtor's position and contentions in the case were still clear from the other portions of the Joint Pretrial Order that were completed, including the stipulated facts, the contested issues of fact, and the contested issues of law.

[2] Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

2

certain *Controlling Principals Guaranty and Covenant* (the "**Guaranty**") under which the Debtor became a guarantor to the Plaintiff for all payments and obligations the Company owed to the Plaintiff.

The Company operated a franchise café for a time but closed its café on or about July 11, 2019.

The parties offered differing accounts of the circumstances of the closure and what happened in the days that followed. The Debtor testified that he called Fidel Martinez—the Director of Operations for the Plaintiff and the Debtor's primary point of contact with the Plaintiff—to notify him of the closure. The Debtor testified that on that call, they discussed whether there would be additional fees or royalties due under the Franchise Agreement, and Mr. Martinez said he would have to discuss the matter with his superiors and get back to the Debtor. The Debtor further testified that Mr. Martinez contacted him by phone a few days later to instruct him not to remove any supplies, assets, or equipment from the café and to inform him that no royalties or fees would be due going forward. This made some sense since the Plaintiff had the right upon termination of the Franchise Agreement to purchase the Company's equipment and essentially offset the purchase price against any amounts still owed to the Plaintiff under the Franchise Agreement.

But Ziad Dalal, the CEO of the Plaintiff, maintained that the Plaintiff only learned of the closure of the café from the Company's landlord. Mr. Dalal further testified that the Plaintiff never takes possession of the equipment of former franchisees, had no interest in doing so in this case, and did not waive any claims it had under the Franchise Agreement. Rather, Mr. Dalal testified that the Company's landlord took possession of the Company's equipment, which was eventually used by a party that signed a temporary lease with the Company's landlord and a temporary franchise agreement with the Plaintiff.

Counsel for the Plaintiff sent a letter dated August 14, 2019 (the "**Termination Letter**") to the Debtor (1) notifying him that the closure of the Company's café constituted a material breach under section 16.2(e) of the Franchise Agreement and the Plaintiff was exercising its right to terminate the Franchise Agreement, (2) explaining the Plaintiff's position that the Company's closure of the café caused the Plaintiff not less than $77,049.04 in lost profits, which the Plaintiff believes are recoverable as damages, and (3) informing the Debtor of the Plaintiff's position

3

that the Debtor is personally liable for such damages pursuant to the Guaranty. In the Termination Letter, the Plaintiff also noted that the Franchise Agreement provides a 30-day option for the Plaintiff to purchase the Company's equipment at the café and withhold from such purchase price any amounts owed under the Franchise Agreement.

The Debtor testified that he never received the Termination Letter.

The Debtor filed for bankruptcy in December 2019, but the Plaintiff was neither scheduled as a creditor nor listed on the official creditor matrix in the Debtor's bankruptcy case.

Daniel J. Sherman was appointed as the Chapter 7 trustee (the "**Trustee**") in the Debtor's bankruptcy case. Despite the case originally being designated a no-asset case, the Trustee filed the *Trustee's Notice of Assets and Request for Change of Status* on January 10, 2020. Docket No. 11.

The deadline to file proofs of claim in the Debtor's bankruptcy case was set for April 9, 2020, but having not received notice of the Debtor's bankruptcy case, the Plaintiff did not file a proof of claim by the deadline. Instead, in December 2021, the Plaintiff filed a lawsuit against the Company and the Debtor in state court (the "**State Court Action**").

On January 20, 2022, the Debtor filed a *Suggestion of Bankruptcy* in the State Court Action, and the parties agree that before this, the Plaintiff did not have notice—or actual knowledge—of the Debtor's bankruptcy case. On that same day, the Debtor amended his Schedules E and F filed in this bankruptcy case to list the Plaintiff's claim.

Even though the Plaintiff did not receive notice of the Debtor's bankruptcy case for over two years, when the Plaintiff learned of the Debtor's bankruptcy case, the Trustee had not yet made a final distribution to general unsecured creditors.

Nevertheless, on February 28, 2022, the Plaintiff filed this adversary proceeding seeking a declaration pursuant to section 523(a)(3)(A) of the Bankruptcy Code that its claim against the Debtor is not dischargeable because of the Debtor's failure to schedule the Plaintiff's claim or notify the Plaintiff of the bankruptcy case.

On March 1, 2022, the Trustee filed a notice of his final report, his proposed distributions, and the deadline to object, which was 21 days from

service of the notice (*i.e.*, March 22). Docket No. 74. The March 1 final report identified $1,085,634.29 in allowed general unsecured claims and $7,626.29 in funds available for proposed distributions to them. Docket No. 73. The Notices of Electronic Filing for Docket Numbers 73 (the report) and 74 (the notice) reflect that both documents were served electronically on "Crest Foods, Inc." via the same experienced bankruptcy counsel who represents the Plaintiff in this adversary proceeding and has represented the Plaintiff since at least December 3, 2021.[3] The Plaintiff thus had roughly two months after learning of the bankruptcy to file a proof of claim and notify the Trustee (either informally through a phone call or formally through an objection to the proposed distribution) of its desire to participate in distributions.

The Trustee later filed a final account and distribution report indicating that in April 2022, the Trustee distributed $7,626.29 to the holders of $1,140,933.39 worth of allowed general unsecured claims. Docket No. 92.

### III. Conclusions of Law

The Debtor has not contested the validity of the Plaintiff's claim in this adversary proceeding, so the focus is on whether the Plaintiff's claim is nondischargeable under section 523(a)(3)(A) of the Bankruptcy Code. In an action to determine the dischargeability of a debt, the party promoting the exception to discharge must prove by a preponderance of the evidence that the debt is nondischargeable. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

Section 523(a)(3)(A) provides that the Debtor's discharge does not discharge an individual debtor from any debt neither listed nor scheduled under section 521(a)(1) of the Bankruptcy Code, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

In *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 290 (5th Cir. 1994), the Fifth Circuit Court of Appeals reiterated that section 523(a)(3) must be

---

[3] *See* Pl.'s Ex. 5.

5

construed with an eye toward the equitable principles underlying bankruptcy law, so courts must utilize the *Robinson* factors[4] in determining whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt. Under the three *Robinson* factors, courts must examine (1) the reasons the debtor failed to list the creditor, (2) the amount of disruption which would likely occur, and (3) any prejudice suffered by the listed creditors and the unlisted creditor in question. *Id.* The Court will examine each of the three factors in turn.

### A.   The Reason for the Failure to List the Creditor

The first *Robinson* factor considers the reason for the failure to list the creditor. A court should not discharge a debt under section 523(a)(3) if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive, but if the failure is attributable solely to negligence or inadvertence, equity points toward discharge of the debt. *Stone*, 10 F.3d at 291.

At trial, the parties disputed several factual issues related to why the Debtor did not schedule the Plaintiff's claim, including whether Mr. Martinez told the Debtor there would be no fees or royalties due under the Franchise Agreement following the closure of the Company's café, whether Mr. Martinez had authority to make such a statement, whether the Plaintiff took ownership of the Company's equipment following closure of the café, whether the Debtor received the Termination Letter, whether the Debtor kept the Plaintiff informed of his proper mailing address at all times, and whether the Plaintiff sent the Termination Letter to the address required by their contract.

Some of these disputes relate more to legal issues, such as whether the Plaintiff sent the Termination Letter to the correct notice address under the Franchise Agreement and whether the Plaintiff technically waived its claim. But for purposes of the first *Robinson* factor, the Court is more interested in the facts that bear on the Debtor's actual knowledge of the Plaintiff's claim and the Debtor's intent in not scheduling it. If the Debtor had evaded notice of the Plaintiff's claim by intentionally falsifying his notice address or intentionally failing to notify the Plaintiff when the Debtor moved, that would be important, but the evidence did not

---

[4] Drawn from *Robinson v. Mann*, 339 F.2d 547, 550 (5th Cir. 1964).

6

show that. Rather, the evidence showed that the Debtor was trying to keep the Plaintiff updated on how he could be reached, and if the Debtor failed to comply with the technical terms of the Franchise Agreement, the Debtor did not do so fraudulently or intentionally.

The Plaintiff claims that even if the Debtor did not receive the Termination Letter, the Debtor still knew about the Plaintiff's claims against him because the Debtor knew of the Franchise Agreement, the Guaranty, and the Company's closure of its café.

The Debtor argues in response that Mr. Martinez told him after the café closure that the Company should not remove any supplies, assets, or equipment from the café and that the Plaintiff would not assert any claims for royalties or fees going forward. Once again, this makes sense given the Plaintiff's right upon termination of the Franchise Agreement to purchase the Company's equipment and credit the purchase price against any amounts still owed to the Plaintiff under the Franchise Agreement.

The Court believes the Debtor's explanation for why he thought he owed the Plaintiff nothing when he filed bankruptcy. The Debtor's credibility is enhanced because he did schedule a claim for breach of the Company's lease agreement.[5] That is, the Debtor scheduled the claims he knew about, even those related to the Company.

Furthermore, it is not readily apparent what advantage the Debtor could have gained by not scheduling the Plaintiff's claim, and the Plaintiff did not identify any potential reason for the Debtor to have omitted the Plaintiff's claim if he knew about it.

Ultimately, the Court finds credible the Debtor's testimony that he did not list a debt to the Plaintiff in his bankruptcy case because he believed no such debt existed. The Debtor's failure to schedule the Plaintiff's debt was attributable solely to negligence or inadvertence, and there was no intentional design, fraud, or improper motive. As a result, the first *Robinson* factor weighs in favor of discharging the Plaintiff's claim.

---

[5] Although the commercial lease is not in the record, it appears that the Debtor was either a party to the lease or a guarantor of the Company's obligations under the lease.

### B.     Disruption to the Courts

The second *Robinson* factor focuses on undue disruption to the court's docket. *Stone* specifically noted that the type of disruption caused by allowing debtors to amend their schedules and creditors to submit proofs of claims outside the prescribed time period "is not so inordinate as to tip the scales against discharging the debt." *Stone*, 10 F.3d at 291. That roughly describes the disruption caused by the Debtor in this case. If the Plaintiff had filed a proof of claim once it learned of the bankruptcy case, it might have caused a slight delay in creditors receiving their distributions, but there is no indication that such a delay would have been anything but minor. Furthermore, the Plaintiff has not sought to "claw back" distributions made to general unsecured creditors to allow for a pro rata distribution to the Plaintiff, and such an attempt would likely be unsuccessful at this point because the Plaintiff did not participate in the distribution when it had the opportunity to do so and the distributions are now final. In other words, the only disruption caused by the Debtor's failure to list the claim is this nondischargeability litigation. Overall, the second *Robinson* factor does not weigh significantly in favor of nondischargeability.

### C.     Prejudice to Creditors

The third *Robinson* factor, which focuses on prejudice to the creditors, "is the most critical." *Stone*, 10 F.3d at 291. But creditors "are prejudiced only if their rights to receive their share of dividends and obtain dischargeability determinations are compromised." *Id.*

In *Stone* and other no-asset cases,[6] courts have routinely held that there is no prejudice to a creditor if its debt is discharged in a case where no creditors are receiving any dividends because the creditor's right to participate in dividends would not be any different had the creditor been listed on the debtor's schedules. *Am. Chiropractic Clinic v. Rodriguez (In re Rodriguez)*, No. 02-10970, 2003 U.S. App. LEXIS 28239, at *2–3 (5th Cir. Feb. 10, 2003); *Armstrong v. Atlas-Telecom Serv.-USA, Inc.*, 562 F. Supp. 2d 812, 817–18 (E.D. Tex. 2007); *United States v. Williams*, No.

---

[6] A no-asset case is one where the Chapter 7 trustee estimates there will be no distributions to general unsecured creditors.

8

3:03-CV-2321-D, 2005 U.S. Dist. LEXIS 15857, at *18 (N.D. Tex. Aug. 3, 2005).

This case is a little different, though, because there was a 0.7% distribution to general unsecured creditors. But even in Chapter 7 asset cases—like this one—courts have held that an unscheduled creditor's claim is discharged if the creditor received notice of the bankruptcy case in time to file a claim and share pro rata in distributions with other creditors. *See In re Reed*, No. 08-20229, 2009 Bankr. LEXIS 980, at *7–8 (Bankr. N.D. Tex. Apr. 30, 2009) ("It is this Court's opinion that *Matter of Stone* basically requires that unless the debtor has intentionally failed to provide appropriate notice to a creditor in time for such creditor to file a proof of claim by the proof of claim deadline date, such claim will still be discharged if notice is provided in sufficient time to allow the creditor to file a claim and to receive a pro rata distribution of the dividend made to other similarly situated creditors."); *Lott Furniture, Inc. v. Ricks (In re Ricks)*, 253 B.R. 734, 744 (Bankr. M.D. La. 2000) ("Section 523(a)(3)(A) . . . is inapplicable to the situation where the creditor receives notice of the bankruptcy case too late to allow the filing of a claim by the bar date, but in time to allow the creditor to file a proof of claim prior to distribution.").

While in *Reed* and *Lott Furniture* the distributions had not occurred when the decisions were rendered, that does not change the analysis. The Plaintiff was notified of the Debtor's bankruptcy case—and scheduled as a creditor—before distributions were made, and in time for the Plaintiff to assert its right to receive its share of the dividend. The Plaintiff's choice to pursue a nondischargeable claim instead of accepting the distribution available to all general unsecured creditors does not constitute prejudice.

The additional prejudice that the Plaintiff complains of does not tip the scales. The Plaintiff would not have incurred the expense of the State Court Action had the Debtor properly scheduled the Plaintiff's claim and notified the Plaintiff of the bankruptcy case. But the unscheduled creditor in *Reed* also filed a state court action before being notified of the bankruptcy case, and the prejudice was not sufficient to justify relief under section 523(a)(3)(A). *See Reed*, 2009 Bankr. LEXIS 980, at *1–2.

The Plaintiff also claims prejudice because it would have had to file a proof of claim and a motion to allow a late-filed proof of claim. This

9

alleged prejudice is greatly exaggerated. Section 726(a)(2)(C) of the Bankruptcy Code provides that a "tardily filed" claim shares with other unsecured creditors if the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of claim but such proof of claim is filed in time to permit payment of such claim. Therefore, the Plaintiff did not have to file a motion to allow a late claim;[7] all the Plaintiff had to do was file a proof of claim. And being required to file a proof of claim is not prejudice.

Though it seems fairly obvious, the Court also notes that the minimal amount of the distribution available to the Plaintiff and the fact that other creditors' distributions would have been diluted if the Plaintiff had filed its proof of claim do not constitute prejudice. *See Lott Furniture*, 253 B.R. at 751 ("The creditor cannot be prejudiced by being treated the way the Bankruptcy Code provides that it be treated.").

Finally, a creditor might be prejudiced if its right to obtain a dischargeability determination is compromised. But here, the Plaintiff has not identified a basis for any objections to discharge or exceptions to discharge that could not have been raised in this adversary proceeding.

## IV. Conclusion

After considering the evidentiary record, the arguments of counsel, and the applicable standard, the Court finds and concludes that the *Robinson* factors do not support a declaration under section 523(a)(3)(A) that the Plaintiff's claim against the Debtor is nondischargeable. The Court believes this ruling comports with the Fifth Circuit's instruction to construe section 523(a)(3) with an eye toward the equitable principles underlying bankruptcy law.

Rather than filing a proof of claim and taking the roughly $500 distribution that it would have been entitled to, the Plaintiff elected to file an adversary proceeding in an attempt to obtain a nondischargeable claim for $77,049.04. While the distribution that the Plaintiff would have

---

[7] The Court is confident that any issues concerning a late-filed claim could have been resolved—or at least simplified—with a phone call by the Plaintiff's counsel to the Trustee. But even if the Plaintiff had to file a motion to allow its late-filed claim, such a motion would have been simple to draft and prosecute and likely would have been unopposed given the Debtor's admission that he did not schedule the Plaintiff's claim.

received would have been minimal, that is all general unsecured creditors were entitled to in this case. To reward the Plaintiff with the nondischargeable claim it seeks would be a windfall.

For the reasons stated herein, all relief requested by the Plaintiff is denied, and the Court will separately enter judgment in favor of the Debtor.

### End of Findings of Fact and Conclusions of Law ###